UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-40201-RWZ

AKTHAM ABUHOURAN

v.

DAVID L. WINN, *et al.*

ORDER

February 10, 2012

ZOBEL, D.J.

Plaintiff Aktham Abuhouran, a former inmate at Federal Medical Center Devens ("FMC Devens"), Massachusetts, brings this action against the United States and various FMC Devens medical personnel individually. He alleges that these defendants were deliberately indifferent to his medical needs and failed to prevent his contracting Methicillin Resistant Staphylococcus Aureus ("MRSA"), a highly contagious staph bacterium, by transferring him to an area of FMC Devens that was less sanitary than available alternatives.[1] Abuhouran also alleges that staff at the Bureau of Prisons ("BOP") improperly calculated his release date, released him prematurely, and then. after discovering the error, re-arrested and imprisoned him. Abuhouran, who underwent two spinal surgeries while in BOP custody and suffers from numerous infirmities, asserts that during the transport back to FMC Devens, which lasted several days, he was handcuffed and shackled and was denied access to his medications and medical

---

[1] MRSA is resistant to many antibiotics and typically manifests itself as a skin infection but can manifest itself in more serious ways including infections of the bloodstream, urinary tract, or lungs.

care. As a result he suffered physical and emotional damages.

The second amended complaint is in four counts: the first is a <u>Bivens</u> claim grounded in the Eighth Amendment against several members of the medical staff and alleges that their acts and omissions which amounted to deliberate indifference caused plaintiff to contract MRSA; the second, against the United States under the Federal Tort Claims Act ("FTCA"), claims medical negligence based on the same conduct; and the third and fourth counts, against the United States, also under the FTCA, allege intentional and negligent infliction of emotional distress as result of the BOP's miscalculation of plaintiff's release date and his re-arrest.

All defendants have moved to dismiss all counts or, in the alterative, for summary judgment. Defendants have filed approximately 1,000 pages of declarations, affidavits, prison and medical records and other documents in support of their position that plaintiff received adequate medical care. In response plaintiff has submitted a F.R.C.P. Rule 56(f) affidavit urging the court not to consider summary judgment before plaintiff has had an opportunity to take discovery. Plaintiff's motion is allowed, and I proceed to consider only the motion to dismiss.

**I. Background**

The following description is gleaned entirely from the factual allegations advanced in the complaint.

**A. FMC Devens**

FMC Devens, a federal prison that houses male prisoners requiring specialized medical care and contains three separate housing units for inmates: the "Long Term

Care Unit" ("LTCU"), P-2 units and N-2 units. Abuhouran describes each in terms of their level of hygienic conditions and maintenance.

LTCU resembles a hospital where inmates bathe frequently with the assistance of orderlies, are continuously monitored, have unrestricted access to medical care and which is cleaned frequently.

P-2 houses prisoners who need less medical care. They use communal showers and are responsible for cleaning their own rooms and laundering their own linens (in shared washers and dryers), but they also enjoy unrestricted access to medical care. Mattresses in P-2 are cleaned infrequently, if ever.

N-2 is for prisoners who are healthier than those housed in the other two units but still require medical attention. N-2 prisoners live in two-man rooms, and like P-2 bathe in communal showers and are responsible for cleaning their own rooms and laundering their own linens. They do not have access to unrestricted medical care but must submit a sick call which typically results in a medical appointment a few days later. They must travel to the FMC mess hall to receive meals, whereas prisoners in the other two units have their meals delivered to them. N-2 mattresses are also cleaned infrequently, if ever.

At all times relevant to the complaint, David Winn was Warden, Dr. Sandra Howard was Clinical Director of Health Services, Helga Baca was Head Nurse, and Dr. Deborah Shult was Assistant Warden for the FMC Devens Medical Department.

**B. Positive MRSA Indications**

In November 2004, after emergency spinal surgery (T2-T5 laminectomy),

3

Abuhouran was transferred to FMC Devens. At the time of the transfer he had a Peripherally Inserted Central Catheter ("PICC"), used to allow intravenous access to a patient for a prolonged period of time. At the time, he alleges he was not a carrier of MRSA.

Upon arrival at FMC Devens he was assigned to the LTCU where be became a patient of defendants Baca, Howard and Shult.

In January 2005, Baca discharged plaintiff from the LTCU to a four-man cell in P-2. On information and belief, defendant Baca did so at the direction of defendant Howard.

At the time of his discharge to P-2, Abuhouran had not yet recovered from the laminectomy, was incapable of fully caring for himself and still had a PICC line inserted into his arm. His condition was obvious to those in his presence as well as anyone who had reviewed his medical records.

Abuhouran alleges, upon information and belief, that at least one of his fellow prisoners at FMC Devens was a carrier of MRSA at the time of his transfer to P-2 but does not allege where such inmate(s) resided. Within a month of his transfer to P-2, Abuhouran discovered a boil on his body which a culture revealed was infected with MRSA.

In October 2005, plaintiff underwent a second spinal surgery (anterior cervical diskectomy). This procedure involved harvesting tissue from his leg and making an incision in his neck to access his spine, resulting in open lacerations on his neck and leg.

4

Upon his return to FMC from the diskectomy, Abuhouran was assigned to N-2 housing. He does not allege who made the assignment decision, however, he states that despite his protests (but again failing to state to whom these protests were made), Baca did not then reassign him.

He spent three days housed in N-2 before he was reassigned to the LTCU. Shortly thereafter in October 2005, a culture revealed a second positive indication for MRSA.

Abuhouran claims that his assignment to P-2 when he had an open puncture in his arm for the PICC line, and to N-2 when he had post-operative incisions and was incapable of fully caring for himself, imperiled his health with an excessive risk of contracting MRSA which is prone to colonize open wounds. Defendants Winn, Howard, Baca, and Shult were aware, or should have been aware, of this risk.

Plaintiff notes that defendants Winn and Shult, although not directly involved in the assignment decisions, were either aware of his assignments at the time, or became aware of them shortly after they occurred, yet did nothing to prevent or modify them.

### C. Miscalculation of Release Date and Deprivation of Medication and Medical Care During Transfer Period

On November 1, 2006, the United States District Court for the Eastern District of Pennsylvania revised Abuhouran's sentence to add a term of imprisonment for 24 months, to be served consecutively to the sentence he was then serving. Thereafter, the BOP employees responsible for calculating plaintiff's sentence (herein, the "sentence calculators") miscalculated the release date, and plaintiff was prematurely

released from custody on November 7, 2006.

Plaintiff then returned to his home in New Jersey and began the process of reintegration and reestablishing ties with his family. On November 15, 2006, during a routine meeting with his probation officer, he was abruptly informed of the miscalculation, and then taken into custody handcuffed and shackled. He spent the next few days in transit from Newark, New Jersey, to FMC Devens. During this time, he was denied medication, medical care, and was shackled for extended periods of time. He states that because of the miscalculation of his release date and consequent lack of medical care that he suffered physical and emotional pain.

## II. Standard

On a motion to dismiss, the "court takes as true all well-pleaded facts in the complaint[ ], scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). The inquiry is limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). "A court considering a motion to dismiss can choose to begin by identifying pleadings, that, because they are not more than conclusions are not entitled to the assumption of truth."" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" Id. at 1949.

**III. Analysis**

    **A. Eighth Amendment Claim (Count I)**

The Supreme Court in Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 389 (1971), held that the Fourth Amendment implicitly authorized a court to order federal agents to pay damages to a person injured by the agents' violation of the Amendment. Carlson v. Green, 446 U.S. 14, 16 - 17 (1980), extended the Bivens remedy to Eighth Amendment violations when federal officials are deliberately indifferent to a prisoner's medical needs.

To plead a Bivens claim for failure to provide adequate medical attention, plaintiff must allege that (1) he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the federal officials acted with a "culpable state of mind," which is "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

        **i. Deprivation of a Serious Medical Need**

As to the first element, plaintiff alleges that when he was in an obviously vulnerable state, defendants recklessly exposed him to, and he ultimately contracted, a highly contagious MRSA infection. For a "condition of confinement that is sure or very likely to cause serious illness and needless suffering," such as exposure to "infectious maladies such as hepatitis and venereal disease," the "Eighth Amendment requires a remedy." Helling v. McKinney, 509 U.S. 25, 33 (1993).

        **ii. Deliberate Indifference**

7

Deliberate indifference by a prison official under the Eighth Amendment means that "the official <u>knows of</u> and disregards an excessive risk to inmate health and safety." <u>Farmer</u>, 511 U.S. at 837. That calls for "inquiry into a prison official's state of mind." <u>Id.</u> at 838, 840, 844.

However, the complaint does not plead that any of the individual medical officials were aware of plaintiff's risk of contracting MRSA at the P-2 or N-2 units of FMC Devens. Nor does it allege that when they changed his housing any of the medical defendants knew: (1) that any other inmate(s) were carriers of MRSA and, more important (2) where such inmate(s) were housed. Finally, plaintiff does not claim that the medical staff failed to treat the MRSA once it was discovered.

The deliberate indifference standard is a "stringent constitutional standard." <u>Leavitt v. Correctional Medical Services, Inc.</u>, 645 F.3d 484, 505 (1st Cir. 2011). It "encompasses a 'narrow band of conduct': subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim ..." rather the deprivation must have been carried out so as to "constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind." <u>Id.</u> at 497 (internal citations omitted). Plaintiff's complaint simply does not plead the purposeful wanton conduct the Eighth Amendment prohibits.

Defendants' motion to dismiss Count I is allowed.

**B. The FTCA Claims**

Title 28 U.S.C. § 1346(b)(1) grants jurisdiction to the federal courts to hear negligence claims against the federal government "under circumstances where the

8

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

As stated, plaintiff asserts negligence by the medical staff and both intentional and negligent infliction of emotional distress by BOP personnel. The United States responds that he has not met the presentment requirements of the statute, 28 U.S.C. § 2675.

### i. Presentment

> The FTCA is a limited waiver of sovereign immunity which allows an injured party to sue the United States for torts committed by federal employees. Prior to commencing an action against the United States under the FTCA, a claimant must have first presented the claim to the appropriate federal agency and the claim must have been denied. 28 U.S.C. § 2675. A tort claim against the United States is forever barred unless properly presented in writing to the appropriate agency within two years after its accrual. 28 U.S.C. § 2401(b).

Corte-Real v. United States., 949 F.2d 484, 486 (1st Cir. 1991).

Defendants concede that Abuhouran filed three separate claims: (1) a claim on September 11, 2006, with the BOP stating that the FMC Devens medical staff failed to protect him from being infected from MRSA; (2) on December 25, 2006, with the Department of Justice's Tort Branch BOP; and (3) on March 7, 2007, with the BOP for relief stemming from Abuhouran's re-arrest and remand to BOP custody. Regional Counsel for the BOP noted that Abuhouran's claim "appeared to be a BOP sentence computation matter."

Nevertheless, defendants argue that Abuhouran's claims were insufficient because (1) his September 2006 claim did not specifically complain of "inadequacy" of care following his spinal surgeries; and (2) his December 2006 and March 2007 claims,

although mentioning several individuals allegedly involved in Abuhouran's sentence calculation, did not "reference the miscalculation of his sentence."

Defendants' objections miss the mark. "The purpose of the administrative claim presentment requirements in Section 2675(b) and the applicable regulations is to give notice to the Government 'sufficient to allow it to investigate the alleged negligent episode to determine if settlement would be in the best interests of all.'" Corte-Real, 949 F.2d 484 at 486 (internal citations omitted). Plaintiff's submissions were sufficient to allow the BOP to investigate both his medical and sentence calculation claims.

### 1. Negligence (Count II)

To prevail on a negligence claim, a plaintiff must show "(1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." Jorgensen v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990).

Abuhouran alleges that the medical defendants negligently transferred him to living quarters that were less-hygienic than the LTCU (i.e., N-2 and P-2 units), knowing that he had open wounds that made him more susceptible to contracting MRSA.

Plaintiff's difficulty is that nowhere does he sufficiently allege that it was defendants' negligent transfer to the N-2 and P-2 units (or any other negligent act) that actually caused his infection and consequent injuries.

Defendants' motion to dismiss Count II is allowed.

### 2. Intentional Infliction of Emotional Distress (Count III)

For a claim of intentional infliction of emotional distress, a plaintiff must show

> (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, [ ] (2) that the defendant's conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171, 180 (1982).

> Intentional Infliction of Emotional Distress "applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. It applies also where he acts recklessly [ ] in deliberate disregard of a high degree of probability that the emotional distress will follow."

Restatement (Second) of Torts § 46 (1965).

Plaintiff states that the sentence calculators "intentionally [ ] misread, misinterpreted, and misapplied [the judge's sentencing order]" in determining Aburouran's release date. However, he does not plead facts from which one can infer that the sentence calculators actually knew of the miscalculation or acted recklessly thereto. Further, the allegations are devoid of any facts that defendants' conduct was "extreme and outrageous, beyond all possible bounds of decency." Therefore, plaintiff does not plead the first two Payton elements; in addition the allegations are merely conclusory and therefore insufficient to state a claim. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("formulaic recitation of a cause of action's elements will not do.").

Defendants' motion to dismiss Count III is allowed.

### 3. Negligent Infliction of Emotional Distress (Count IV)

To make out a claim of negligent infliction of emotional distress, a plaintiff must show: "1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton, 386 Mass. 540, 437 (1982).

Abuhouran alleges that (1) the sentence calculators miscalculated his release date causing him to be released earlier than his sentence actually required; (2) that he spent approximately a week released from custody obtaining housing and employment and reestablishing a connection with this family and community; (3) that during a routine visit with his probation officer he was re-apprehended by deputy United States marshals and transported back to FMC Devens; (4) that while being transferred, which lasted several days, he was handcuffed and shackled (despite having two spinal surgeries within the past two years) and was denied access to prescription medication and medical care; and (5) as a result he now suffers from "anxiety attacks, tension, elevated heart rate, heightened blood sugar, sleeplessness, nightmares, and headaches."

Although going forward, Abuhouran will have to sufficiently prove the symptoms he alleges with objective evidence, see Sullivan v. Boston Gas Co., 414 Mass. 129, 132, 137-138 (1993), he has adequately pled a claim for negligent infliction of emotional distress.

Defendants' motion to dismiss Count IV is denied.

**IV. Conclusion**

Defendants' motion to dismiss (Docket # 54) is ALLOWED as to Counts I, II and III and DENIED as to Count IV.

    February 10, 2012                           /s/Rya W. Zobel
         DATE                                  RYA W. ZOBEL
                                                UNITED STATES DISTRICT JUDGE